**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dream Team Holdings LLC, et al., | No. CV-16-01420-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Rudy Alarcon, et al., | |
| Defendants. | |

Defendants have filed a motion to disqualify Plaintiffs' counsel. (Doc. 20.) On July 26, 2016, the Court held a telephonic conference on the motion, stayed the case pending resolution of the motion to disqualify, and ordered supplemental briefing. (Doc. 38.) Briefing is now complete. For the reasons stated below, the motion is granted in part.

## BACKGROUND

On April 29, 2016, Plaintiffs Dream Team Holdings, LLC (Dream Team) and Green Light District Holdings, LLC filed suit against Defendants in Maricopa County Superior Court alleging nine causes of action, including breach of contract and fraud. (Doc. 1-1.) Plaintiffs allege that they invested a large sum of money in Defendants Energy Clinics, LLC (Energy Clinics) and Organica Patient, Inc.'s (Organica) medical marijuana business, but failed to receive member distributions under the Operating Agreement. (*Id.*, ¶ 34.) On May 9, 2016, Defendants Energy Clinics, Kristen Abelon,

and Rudy Alarcon removed the case to this Court on the basis of diversity jurisdiction. (Doc. 1.)

Shortly thereafter, Defendants filed the instant motion to disqualify, alleging that Plaintiffs' counsel, John Armstrong, engaged in improper *ex parte* communications with five current employees of Defendant Energy Clinics in violation of Arizona Rule of Professional Conduct 4.2. (Doc. 20.) The five employees are Matt Tupuola, Jason Wendlandt, Tuia Galeai, Shannon Fernandez, and Angie Mercado. (Doc. 46 at 5.) In mid-May 2016, after Plaintiffs filed the lawsuit, Defendants learned that Plaintiffs' counsel had contacted Wendlandt and Tupuola. (Doc. 20-1 at 7.) Abelon and Alarcon confronted both Wendlandt and Tupuola about their conduct, but they "walked out" and quit Energy Clinics. (*Id.*) Subsequently, Abelon allegedly began receiving threatening text messages from Mike Smith, the manager of Dream Team. (*Id.*)

On May 21, 2016, Defendants' counsel, Shane Ham, sent a letter to Armstrong to cease the improper communications. (*Id.* at 10-12.) Ham also demanded that Armstrong and all counsel of record disclose the extent of their contacts with Energy Clinics employees and turn over copies of all such communications. (*Id.* at 11.) Armstrong admitted that he engaged in *ex parte* contacts with the employees, but stated that several employees had contacted him regarding concerns about illegal practices carried out at Organica and that none of them were managerial employees. (*Id.* at 14.) Later that day, Armstrong sent another letter to Ham stating:

> We are now getting reports that your clients have threatened the personal safety of several employees, along with threatening all employees about their job security should any of them report their suspicions that that [sic] your clients may have engaged in unlawful conduct. I sincerely hope that this is mere rumor. But regardless, it would be in everyone's best interest if your clients clarified that they are no making such threats to their employees. So again, we are reaching out for a sit down with just lawyers or the lawyers and the key principals to see if its [sic] possible to reach a business solution.

(*Id.* at 19.) Plaintiffs' counsel failed to list the employees with whom they had communicated and the extent of those communications.

At a telephonic conference on July 26, 2016, the Court ordered that Plaintiffs' counsel disclose any statements taken from employees or former employees of Defendants and that Smith, Alarcon, and Abelon be deposed. (Doc. 38.) Both parties submitted supplemental briefs, and Plaintiffs disclosed that they obtained declarations from Tupuola, Wendlandt, and Galeai in mid-May 2016. Defendants request that the Court disqualify Horwitz & Armstrong and suppress the declarations. (Doc. 46 at 9.)

## **ANALYSIS**

The Arizona Rules of Professional Conduct "apply to attorneys admitted or otherwise authorized to practice before the United States District Court for the District of Arizona." LR Civ. 83.2(e). Arizona Rule of Professional Conduct 4.2 provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." "The prohibition is intended to (1) prevent unprincipled attorneys from exploiting the disparity in legal skills between attorneys and lay people, (2) preserve the integrity of the attorney-client relationship, (3) help to prevent the inadvertent disclosure of privileged information, and (4) facilitate settlement." *Lang v. Superior Court*, 826 P.2d 1228, 1230 (Ariz. Ct. App. 1992). Where an organization is involved, Rule 4.2 prohibits attorneys from communicating with three groups of individuals: "(1) those having a managerial responsibility on behalf of the organization; (2) any person whose act or omission in connection with the matter may be imputed to the organization; and (3) any person whose statement may constitute an admission on the part of the organization." *Id.* at 1230-31. Importantly, this ethical obligation is triggered if the statement of the employee "might" be admissible—it need not be demonstrated that the statement is, in fact, admissible. *See State ex re. Ariz. Dept. of Health Servs. v. Gottsfield*, 146 P.3d 574, 577 (Ariz. Ct. App. 2006).

Defendants argue that the communications at issue fall within the first and third groups. They assert that statements from all five employees may constitute party

admissions and that Tupuola and Wendlandt were managerial employees of Defendants. The Court finds that Defendants' first argument regarding party admissions is dispositive, and thus it will not address whether Tupuola and Wendlandt were managerial employees.

**I.  Statements that May Constitute Admissions**

"A statement is an admission for the purposes of Rule 4.2 if it constitutes an admission by a party-opponent under Arizona Rule of Evidence 801(d)." *Richards v. Holsum Bakery, Inc.*, No. CV09-00418-PHX-MHM, 2009 WL 3740725, at *5 (D. Ariz. Nov. 5, 2009).  Under Rule 801(d)(2)(D), an admission by a party-opponent is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]"

It is undisputed that all five employees—Tupuola, Wendlandt, Galeai, Fernandez, and Mercado—were employees of Energy Clinics at the time they communicated with Armstrong.  (Doc. 46-2 at 3.)  Therefore, both the "statement by the party's agent or servant" and "made during the existence of the relationship" prongs of Rule 801(d)(2)(D) are met.

With respect to the last prong, Plaintiffs argue that none of the statements concern "a matter within the scope of the agency or employment" with Energy Clinics.  They assert the employees "merely stated what they *witnessed* during their employment" with Defendants.  (Doc. 47 at 3 (emphasis in original).)  This argument misses the point.  The declarations of Tupuola, Wendlandt, and Galeai demonstrate that the communications fall within the scope of their employment.

Abelon testified that Tupuola "was the lead employee in the back of the cultivation. He ran the flower room. He made all of the executive decisions about plant health, management of plants." (Doc. 46-2 at 5.)  He was a "department manager" who supervised up to ten employees at a time. (*Id.* at 6-7.)  In his declaration, he stated that he witnessed fire code violations at Defendants' facilities, that there is no management structure at Organica, that there is a lack of inventory control regarding the marijuana, and that non-employees were invited into the growing operations "wearing Hell's Angels

- 4 -

1  and other motorcycle gear[.]" (Doc. 46-3 at 3.) The Court finds the statements made in
2  the declaration concern matters within the scope of Tupuola's employment given that he
3  was largely responsible for managing the plants. In this lawsuit, Plaintiffs assert
4  Defendants are "siphoning money from the Energy Clinics/Organica grow operations[.]"
5  (Doc. 1-1, ¶ 28.) This allegation relates to several of their claims, namely fraud. The
6  matters discussed between Tupuola and Armstrong directly relate to this issue, and thus
7  the statements in the declaration meet the Rule 801(d) standard. Armstrong violated Rul
8  4.2 by communicating with Tupuola *ex parte*.

9  Regarding Wendlandt, Abelon testified that he was the "lead harvest controller.
10 He managed the tear downs, he managed the environment in all of the dry rooms and
11 tracked the final weights[.]" (Doc. 46-2 at 9.) In his declaration Wendlandt stated that
12 the inventory system is "out of control," that Defendants are modifying harvest dates, and
13 that Alarcon has intimidated and threatened employees. (Doc. 46-3 at 5-6.) Like
14 Tupuola, these statements concern matters within the scope of Wendlandt's employment
15 because he is responsible for weighing and managing the plants. As such, these
16 statements constitute party admissions under Rule 801(d), and Armstrong violated Rule
17 4.2 by communicating with Wendlandt *ex parte*. *See Gottsfield*, 146 P.3d at 577.

18 Regarding Galeai, Abelon testified that he was the assistant to Tupuola and had
19 "authority to destroy plants[.]" (Doc. 46-2 at 10.) Galeai reiterates many of the same
20 concerns as Tupuola and Wendlandt, including a lack of inventory control, as well as an
21 allegation that Abelon forged "Profits and Loss" documents. (Doc. 46-3 at 8.) These
22 statements concern matters within the scope of Galeai's employment, as he had some
23 responsibility regarding inventory working with Tupuola. Therefore, his statements
24 qualify as party-admissions under Rule 801(d), and Armstrong violated Rule 4.2 by
25 communicating with him *ex parte*.

26 With respect to Fernandez and Mercado, the Court is unable to determine whether
27 the communications qualify as party-admissions because the content of such
28 communications is unknown. Although Armstrong admitted to communicating with both

- 5 -

individuals, he did not obtain declarations from them. Should Plaintiffs attempt to use any statements of Fernandez or Mercado in this litigation, however, Defendants may file an appropriate motion to preclude such testimony if there is evidence that the statements were improperly obtained *ex parte*.

In conclusion, the Court finds that Armstrong violated Rule 4.2 by communicating with Tupuola, Wendlandt, and Galeai *ex parte*. Armstrong engaged in these communications notwithstanding his knowledge that Defendants were represented by counsel and Defendants' cease and desist letter. When confronted by Defendants' counsel, Armstrong initially refused to turn over copies of such communications so Defendants could determine if any such violation had occurred. This conduct is unacceptable and violates Rule 4.2.

**II. Appropriate Remedy**

Because Armstrong violated Rule 4.2 by communicating with Tupuola, Wendlandt, and Galeai *ex parte*, the Court must determine the appropriate remedy for the violations. Defendants argue that disqualification is appropriate because the violations were intentional. They assert Armstrong met with numerous employees over several days even after Defendants' counsel sent the cease and desist letter. Defendants also request that the three declarations be suppressed.

"Disqualification is an extreme remedy and should only be ordered 'after careful consideration of the client's rights to be represented by the counsel of her choice, and the nature and extent of the ethics violation.'" *Richards*, 2009 WL 3740725, at *6 (quoting *Palmer v. Pioneer Hotel & Casino*, 19 F. Supp. 2d 1157, 1162 (D. Nev. 1998)). Three factors must be weighed in making this determination: "(1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosure of confidential information; and (3) the public's interest in the scrupulous administration of justice." *Complaint of Korea Shipping Corp.*, 621 F. Supp. 164, 169 (D. Alaska 1985).

Plaintiffs have a strong interest in remaining represented by counsel of their

choosing, and this factor weighs heavily against disqualification. Although Armstrong should not have communicated with Defendants' employees, any prejudice to Defendants arising from such communications can be mitigated by suppressing use of three declarations obtained by Armstrong. The case is still in its infancy, and Defendants fail to identify any irreparable harm should Horwitz & Armstrong remain on the case. Although the public's interest in the scrupulous administration of justice weighs in favor of disqualification, it is not enough to tip the scales in this case. Armstrong's conduct was inappropriate, but it does not warrant the extreme remedy of disqualification. Instead, the Court orders that the three declarations be suppressed from use as evidence in this case. *See Kaiser v. AT & T*, No. CIV 00-724-PHX JWS, 2002 WL 1362054, at *8 (D. Ariz. April 15, 2002) ("Potential sanctions typically include exclusion of evidence" to remedy ethical violations.).

**IT IS ORDERED** that Defendants' motion for disqualification, (Doc. 20), is **GRANTED IN PART**. All documents and evidence that are the product of counsel's *ex parte* communications are excluded from any future proceedings in this case.

Dated this 28th day of September, 2016.

Douglas L. Rayes
United States District Judge