**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dream Team Holdings LLC, et al., | No. CV-16-01420-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Rudy Alarcon, et al., | |
| Defendants. | |

Plaintiffs have filed a motion to remand, (Doc. 10), a motion to compel arbitration, (Doc. 13), a request for judicial notice, (Doc. 15), and two motions to expedite, (Docs. 26, 51). All the motions are fully briefed, and no party has requested argument. For the reasons stated below, Plaintiffs' motion to remand is denied, Plaintiffs' motion to compel arbitration is denied, Plaintiffs' request for judicial notice is granted in part, and Plaintiffs' motions to expedite are denied.

## **BACKGROUND**

This lawsuit arises out of the parties' joint management of a marijuana dispensary. On March 30, 2016, Defendants Rudy Alarcon and Kristen Abelon met with Plaintiff Green Light Holdings, LLC (Green Light) to discuss forming Dream Team Holdings, LLC (Dream Team) to further their joint venture. The parties executed a Term Sheet, which "set[ ] forth the terms and conditions of an Operating Agreement of Dream Team Holdings, LLC[.]" (Doc. 18-1 at 2.) The Term Sheet noted that the "effective date of the

Operating Agreement . . . shall be the date upon which the Company's Articles of Organization are filed with the Arizona Corporation Commission." (*Id.*) The parties agreed that the Term Sheet "represents a legally binding agreement between the parties hereto regarding the principle terms of the Members' agreement to operate the Company, which will be evidenced by a formal Operating Agreement . . . to be effective upon [the filing of the Articles of Organization for Dream Team]." (*Id.* at 14.) The Term Sheet further provided that "if an Operating Agreement is not entered into between the parties, this Term Sheet shall continue in full force and effect." (*Id.*)

After further negotiations, the parties drafted a Memorandum of Understanding (MOU), which set forth the steps necessary to finalize the joint venture. (*Id.* at 20.) It explicitly stated: "No Joint Venture or Partnership Formed." (*Id.*) It also contemplated formation of Dream Team, noting that "Upon execution of the MOU, the Parties shall form Dream Team Holdings, LLC . . . by filing the Articles of Organization[.]" (*Id.*) Once the MOU is executed, the parties would then prepare and execute an Operating Agreement, "which shall substantially reflect the business terms set forth on the . . . Term Sheet[.]" (*Id.* at 21.) The parties never executed the MOU, no Articles of Organization were filed, and negotiations eventually halted.

On April 29, 2016, Green Light brought suit against Defendants alleging, *inter alia*, breach of contract and fraud. The lawsuit named Dream Team as a Plaintiff even though no articles of organization had been filed with the Arizona Corporation Commission. On May 9, 2016, Defendants Rudy Alarcon, Kristen Abelon, and Energy Clinics, LLC (Energy Clinics) removed the case to federal court on the basis of diversity jurisdiction. Defendants argue that Dream Team did not exist at the time Plaintiffs filed their complaint and assert that Dream Team was created solely for the purpose of destroying diversity jurisdiction. Defendants also assert that after negotiations fell through, the parties never agreed to form Dream Team. On May 11, 2016, Dream Team's articles of organization were filed by Plaintiffs' counsel naming Alarcon as a member. On May 27, 2016, Alarcon filed suit in Maricopa County Superior Court to

1 dissolve Dream Team, arguing that he never consented to becoming a member and that
2 Dream Team was fraudulently organized. On May 31, 2016, Plaintiffs moved to compel
3 arbitration and stay the case, citing an arbitration provision in the Term Sheet.

## **REQUEST FOR JUDICIAL NOTICE**

Plaintiffs request that the Court take judicial notice of Alarcon's state court complaint seeking to dissolve Dream Team. (Doc. 15.) Plaintiffs argue that the state court complaint alleges that Dream Team is an Arizona resident, and thus "there was no evidence or factual basis to justify removal jurisdiction based on diversity of citizenship" in the instant case. (*Id.* at 3.) Plaintiffs claim that this constitutes Defendants' admission that remand is appropriate. Plaintiffs also seek sanctions for failing to inform the Court "that they are no longer contesting that federal diversity jurisdiction exists." (*Id.* at 5.)

"The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts routinely take judicial notice of proceedings in other courts "if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Racheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks omitted).

The request for judicial notice is granted in part. The state court proceedings relating to the dissolution of Dream Team are relevant to this case. As such, the Court will take judicial notice of Alarcon's state court complaint.

The Court will not, however, issue sanctions against Defendants. Contrary to Plaintiffs' argument, the fact that Alarcon alleges that Dream Team is a resident of Arizona in the state court complaint does not undermine Defendants' basis for removal in the instant case. Defendants do not dispute Dream Team's citizenship. Instead, they argue that Dream Team should not be considered for purposes of diversity jurisdiction because it was not formed at the time of the complaint and Defendants did not consent to its formation. Plaintiffs' argument misses the point, and the request for sanctions is inappropriate.

**MOTION TO REMAND**

Plaintiffs argue this case must be remanded to Maricopa County Superior Court because complete diversity does not exist between the parties. They assert that although Dream Team was not yet organized at the time the complaint was filed, this defect was cured by filing the articles of organization two weeks later. Even if it was not cured, Plaintiffs argue that Dream Team should be treated as an unincorporated business association for purposes of diversity jurisdiction. Alternatively, Plaintiffs argue that even if Dream Team is not considered for purposes of diversity, complete diversity still does not exist between the parties.

**I. Legal Standard**

"The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). Civil actions filed in state court may be removed to federal district court if the district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal district courts have subject-matter jurisdiction over "all civil actions where the matter in controversy exceeds $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332 "requires complete diversity—no plaintiff may be a citizen of the same state as any defendant." *Cady v. Am. Family Ins. Co.*, 771 F. Supp. 2d 1129, 1130 (D. Ariz. 2011). Section 1332 also "requires courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Mississippi ex rel. Hood v. AU Optronics Corp*, 134 S. Ct. 736, 745 (2014).

**II. Should Dream Team be Considered for Diversity Purposes?**

Defendants argue that Dream Team had not been formed at the time Plaintiffs filed their complaint or at the time Defendants filed their notice of removal. Therefore, they assert Dream Team should not be considered for purposes of diversity jurisdiction. The Court agrees.

Under Arizona law, a LLC "is formed when the articles of organization are delivered to the commission for filing[.]" A.R.S. § 29-635(A). Plaintiffs do not dispute

- 4 -

that Dream Team's articles of organization were not filed until after Plaintiffs commenced suit and after Defendants removed the case to this Court. Therefore, at the time the complaint was filed, Dream Team Holdings was unorganized and did not exist.

It should go without saying that a nonexistent entity does not have standing to bring suit, and therefore should not be considered for purposes of determining diversity jurisdiction. Nonetheless, Plaintiffs repeatedly argue that Dream Team is an "unincorporated association" and has the citizenship of its members. A LLC is an unincorporated association, but Plaintiffs ignore the fact that Dream Team *did not exist* as an unincorporated association (or LLC) at the time they filed suit. Plaintiffs failed to comply with the Arizona statute governing formation of LLCs, and thus Dream Team was a nonexistent unorganized—not unincorporated—entity.

Plaintiffs argue that they cured this jurisdictional defect by filing the articles of incorporation two weeks after they filed suit. But "[i]t has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)). This rule applies "regardless of the costs it imposes." *Id.* at 571. Here, the state of things at the time Plaintiffs filed the complaint was that Dream Team did not exist, and Defendants properly removed the case to this Court based on diversity jurisdiction.

In conclusion, the Court finds that Dream Team was not formed at the time Plaintiffs filed the complaint. It will not be considered in determining whether diversity jurisdiction exists in this action.[1]

**III. Does Complete Diversity Exist Between the Parties?**

Plaintiffs argue that complete diversity does not exist even in the absence of

---

[1] There is a serious question whether the parties agreed to form and operate Dream Team. The Term Sheet appears to be an agreement regarding the principle terms of a forthcoming Operating Agreement should the parties later agree to create Dream Team. It does not instruct the parties to actually create Dream Team. In contrast, the MOU specifically instructed the parties to form Dream Team by filing the articles of organization. The MOU was never signed, however, and the parties did not brief what legal effect, if any, the Term Sheet has in light of the failed negotiations.

- 5 -

Dream Team. It asserts that Plaintiff Green Light is a citizen of California and that one of Defendant Energy Clinics' members is a California resident, thus destroying complete diversity. Plaintiffs are incorrect.

Plaintiff Green Light is a Delaware corporation with its principal place of business in California. (Doc. 10-1 at 2.) A corporation is a citizen of the state in which it is incorporated and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1). As such, Green Light is a citizen of both Delaware and California.

Two Defendants named in this action are LLCs. A LLC is a citizen of "every state in which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). In Arizona, a member of a LLC may withdraw from membership by "delivering written notice of withdrawal to the other members." A.R.S. § 29-734.

All Defendants are citizens of Arizona. Energy Clinics was organized in 2012 and had three members: Alarcon, Abelon, and Jason Santos. Alarcon and Abelon are citizens of Arizona, and Santos is a citizen of California. Santos, however, withdrew as a member from Energy Clinics in October 2013. (Doc. 18-1 at 74.) As such, Energy Clinics is a citizen of Arizona.

Defendant Firebrand Infusions, LLC is another company whose creation was contemplated by the MOU, but never created. It is alleged to be an Arizona LLC by Plaintiffs. Defendant Organica Patient Group, Inc. is an Arizona corporation with its principal place of business in Arizona. Further, although Plaintiffs name several DOES as defendants, "the citizenship of defendants sued under fictitious names shall be disregarded for the purposes of removal." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998).

Accordingly, because complete diversity exists between the parties, the Court has subject-matter jurisdiction over this action, and Plaintiffs' motion to remand is denied.

**MOTION TO COMPEL ARBITRATION**

Plaintiffs argue that Defendants should be compelled to arbitrate Plaintiffs' claims

given the arbitration provision in the Term Sheet. The provision provides:

> Any dispute arising out of the Operating Agreement shall be resolved by binding arbitration, in Maricopa County, Arizona (or such other jurisdiction as the parties may agree). The prevailing party or parties in any such arbitration shall be entitled to reimbursement from the non-prevailing parties for their reasonable attorneys' fees in connection with such dispute and arbitration.

(Doc. 18-1 at 13-14.) Defendants argue that the Term Sheet is not binding because the MOU was never executed and Dream Team was never formed. They also argue that the Operating Agreement was never created, and thus the instant suit cannot arise out of the Operating Agreement. The Court agrees.

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, "mandates that district courts shall direct the parties the process to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The Term Sheet requires the parties to arbitrate disputes "arising out of the Operating Agreement[.]" (Doc. 18-1 at 13.) The Term Sheet was signed by all the relevant parties to this litigation, and thus the Court finds that a valid agreement to arbitrate exists. Because the Operating Agreement was never created, however, the agreement to arbitrate does not encompass the claims raised in the instant lawsuit.

Plaintiffs allege breach of the "Operating Agreement" in their complaint. (Doc. 1-1 at 9-10.) But the Term Sheet is the only signed agreement submitted by the parties in this case. And Plaintiffs do not dispute that the Term Sheet was the only agreement executed between the parties. (Doc. 13 at 2.) The Term Sheet clearly evidences the parties' intent to formalize the terms of the joint venture in a separate Operating Agreement. It states that "[t]he [Term Sheet] is a legally binding agreement between the parties hereto regarding the principal terms of the Members' agreement to operate the

- 7 -

Company, *which will be evidenced by a formal Operating Agreement*[.]" (*Id.* (emphasis added).) It also notes that "if an Operating Agreement is not formed," the Term Sheet remains in effect.[2]

The arbitration provision only applies to disputes arising out of the Operating Agreement. However, because no Operating Agreement was ever executed—no Operating Agreement exists. Consequently, the arbitration provision does not encompass the dispute at issue, and Plaintiffs' motion to compel arbitration is denied.[3]

**IT IS ORDERED**:

1. Plaintiffs' request for judicial notice, (Doc. 15), is **GRANTED IN PART**.

2. Plaintiffs' motion to remand, (Doc. 10), is **DENIED**.

3. Plaintiffs' motion to compel arbitration, (Doc. 13), is **DENIED**.

4. Plaintiffs' motions to expedite, (Docs. 26, 51), are **DENIED**.

5. The Court will set a scheduling conference by separate order.

Dated this 7th day of October, 2016.

Douglas L. Rayes
United States District Judge

---

[2] As noted above, the extent to which Term Sheet continues to govern the relationship between the parties is not addressed in the briefs.

[3] Defendants also argue that Plaintiffs waived any right to arbitrate by filing this action. Because no agreement to arbitrate was formed, however, the Court need not reach this issue.