**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dream Team Holdings LLC, an Arizona limited liability company; and Green Light District Holdings LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Rudy Alarcon; Kristen Abelon; Philip Baca; Organic Patient Group Inc., an Arizona non-profit entity; and Energy Clinics LLC, an Arizona limited liability company,<br><br>Defendants. | No. CV-16-01420-PHX-DLR<br><br>**ORDER** |

This action arises out of a failed partnership to legally cultivate and distribute medical marijuana in Arizona. Plaintiffs Dream Team Holdings (Dream Team) and Green Light District Holdings (Green Light) seek damages from Defendants on a number of contract, tort, and equitable claims. Before the Court are Green Light's motion for partial summary judgment or an order treating certain facts as established (Doc. 74), Defendants' motion to dismiss the claims brought on behalf of Dream Team (Doc. 87), and Dream Team's motion to strike portions of Defendants' reply memorandum or, alternatively, to file a surreply (Doc. 91). The motions are fully briefed. For the reasons stated below, the motion to dismiss is granted and the motions to strike and for partial

summary judgment are denied.[1]

**I. Background**

Green Light and Defendants legally cultivate and distribute marijuana in California and Arizona, respectively. The parties contemplated a partnership, which they planned to call Dream Team. During negotiations, the parties executed a Term Sheet and Memorandum of Understanding (Term Sheet), which appears to be an agreement regarding the principle terms of a forthcoming Operating Agreement should the parties later form Dream Team. Dream Team, however, was never properly incorporated and an Operating Agreement consequently never took effect.

Each party blames the other for the venture's failure. Green Light alleges that it invested money and in-kind services toward the creation of Dream Team, but that the venture failed because Defendants were unresponsive, failed to provide an accounting, and failed to return revenue or profits. In contrast, Defendants claim that Green Light's agent in Arizona had a problematic management style, was ignorant of Arizona law, acted unlawfully, and engaged in unprofessional behavior. Defendants admit that Green Light invested some money in the venture, but dispute the amounts invested or that they approved those sums. Defendants also allege that the work of Green Light's agents damaged their operation, property, and valuable strains of marijuana crop. Defendants claim that they have lost clients, employees, and potential investment opportunities. Lastly, Defendants allege that they made good faith efforts to negotiate a generous settlement with Green Light which proved unsuccessful.

Green Light and Dream Team filed this action in Maricopa County Superior Court on April 29, 2016, and the matter thereafter was removed to this Court. After removal, Green Light unilaterally organized Dream Team and named Defendant Alarcon as a member. Alarcon later filed a separate action in Maricopa County Superior Court seeking dissolution of Dream Team and, on May 22, 2017, the superior court entered

---

[1] The request for oral argument is denied because the issues are adequately briefed and oral argument would not aid the court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

- 2 -

judgment ordering the dissolution. (Doc. 87-2.) Defendants now seek to dismiss the claims brought by Dream Team because it did not exist when this case was filed and, though it later had a short-lived existence, it has since been dissolved. Green Light seeks partial summary judgment on its equitable claim for "money had and received."

**II. Dream Team's Motion to Strike or File Surreply**

Dream Team asks the Court to strike what it characterizes as new arguments within Defendants' reply brief or, alternatively, to allow it to file a surreply. (Doc. 91.) "Motions to strike are disfavored and are rarely granted." *XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*, No. CV-08-1467-PHX-ROS, 2009 WL 2382998, at *1 n.1 (D. Ariz. Aug. 4, 2009) (citation omitted). Under Local Rule 7.2(m):

> a motion to strike may be filed only if it is authorized by statute or rule, such as Federal Rule of Civil Procedure 12(f), 26(g)(2), or 37(b)(2)(A)(iii), or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized by a statute, rule, or court order.

Dream Team relies on Federal Rule of Civil Procedure 12(f), which permits the Court, on its own or by motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A reply memorandum in support of a motion to dismiss, however, is not a "pleading" for purposes of Rule 12(f). Indeed, Rule 7(a) defines "pleading" as only:

> (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders on, a reply to an answer.

Moreover, Rules 7 and 12 distinguish pleadings from motions. *See* Fed. R. Civ. P. 7(a)-(b); Fed. R. Civ. P. 12(b). Accordingly, Dream Team's motion to strike is denied because it is not authorized under Local Rule 7.2(m). *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) ("Under the express language of the rule, only pleadings are subject to motions to strike."); *Ordahl v. U.S.*, 646 F. Supp. 4, 6 (D. Mont. 1985) (concluding that it would be inappropriate to strike a motion for reconsideration because motions are not pleadings).

Moreover, on the merits the Court finds that Defendants did not raise new arguments in their reply memorandum. Instead, Dream Team appears to have misinterpreted the arguments that Defendants made in their initial motion. The Court finds that Defendants' arguments are well within the permissible scope of a reply. *See Beckhum v. Hirsch*, No. CV 07-8129-PCT-DGC (BPV), 2010 WL 582095, at *8 (D. Ariz. Feb. 17, 2010). Dream Team's alternative request to file a surreply therefore is denied.

**III. Defendants' Motion to Dismiss Dream Team**

Defendants contend that the claims brought by Dream Team must be dismissed because Dream Team lacks standing. The Court agrees. A plaintiff has standing only if it has suffered injury-in-fact, meaning: "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Dream Team did not exist at the time Green Light filed its complaint. It therefore is nonsensical to claim that Dream Team was injured by actions that predated its existence. Indeed, the Court previously addressed this issue it its October 7, 2016 order denying Green Light's motion to remand. (Doc. 53.) In concluding that Dream Team's citizenship should not be considered in determining whether diversity jurisdiction exists, the Court found that "Dream Team was a nonexistent unorganized—not unincorporated—entity" and noted that "[i]t should go without saying that a nonexistent entity does not have standing to bring suit." (*Id.* at 5.)

The Court also agrees with Defendants that Dream Team's claims must be dismissed because it is not capable of suing or being sued as a matter of Arizona law. Unlike a natural person, limited liability companies "are statutorily-created entities." *TM2008 Invs. Inc. v. Procon Capital Corp.*, 323 P.3d 704, 707 (Ariz. Ct. App. 2014). An LLC's capacity to sue or be sued therefore is controlled by state law—here, A.R.S. § 29-782(B). Under this section, a dissolved LLC can only carry out business that is "necessary to wind up and liquidate its business and affairs." *Id.* "Pressing litigation that

may result in monetary damages certainly falls within this ambit." *Rose Goodyear Props., LLC v. NBA Enters. Ltd. P'ship*, 332 P.3d 86, 90 (Ariz. Ct. App. 2014). Dream Team, however, existed for a mere fifteen days before it was dissolved by court order, and the superior court concluded that it had "no assets, liabilities, contractual commitments, or other business to conduct." (Docs. 87-1, 87-2). This litigation therefore does not fall within the limited range of activities in which Dream Team, as a dissolved LLC, is authorized to engage. Defendants' motion to dismiss the claims brought by Dream Team is granted.

**IV. Green Light's Motion for Partial Summary Judgment**

    **A. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324.

Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

    **B. Analysis**

Green Light moves for partial summary judgment on its money had and received claim only. An action for money had and received arises when a defendant has received money "which in equity and good conscience he ought to pay over to the plaintiff." *Copper Belle Mining Co. of W. Va. v. Gleeson*, 134 P. 285, 286 (Ariz. 1913). To

establish liability, the plaintiff must demonstrate that the defendant benefitted from the money and services that were provided, measured as the "value to the defendants, not the cost to the plaintiff in performing such services." *Spitalny v. Tanner Constr. Co.*, 254 P.2d 440, 446 (Ariz. 1953). The action is akin to an unjust enrichment claim, which requires proof "that the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should provide compensation." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. 2011.) Indeed, though the complaint styles the action as one for money had a received and Green Light briefed it as such in its initial motion, Green Light's reply memorandum characterizes the action as one for unjust enrichment. (*Compare* Docs. 1 at1-1 at 13, 74 at 8, *with* Doc. 81 at 7.) The Court therefore will rely on authorities discussing both claims for purposes of this order.

Preliminarily, the Court notes that equitable relief typically is not appropriate when there is an adequate remedy at law. *See Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 947-58 (Ariz. Ct. App. 2010). Green Light asserts that it is entitled to equitable relief because, in denying its motion to compel arbitration, the Court found that no enforceable contract between the parties existed. (Doc. 81 at 2.) Green Light's assertion reflects a misreading of the Court's order. The arbitration provision that Green Light sought to enforce is contained within the Term Sheet, and requires the parties to arbitrate "[a]ny dispute arising out of the Operating Agreement." (Doc. 18-1 at 13-14.) The Court denied Green Light's motion to compel arbitration because the arbitration provision only applies to disputes arising out of the Operating Agreement, no Operating Agreement was ever executed, and the arbitration provision therefore did not encompass the dispute at issue. (Doc. 53 at 8.) Nowhere did the Court find that the Term Sheet was not an enforceable contract.

To the contrary, the Court explicitly stated that "[t]he Term Sheet was signed by all the relevant parties to this litigation, and thus . . . a valid agreement to arbitrate exists." (*Id.* at 7.) Moreover, although Green Light alleged that Defendants breached the

Operating Agreement, the Court repeatedly noted that the Term Sheet was the only signed agreement submitted by the parties, and that by its own terms it was intended to be "a legally binding agreement between the parties" that would "remain in full force and effect" even if an Operating Agreement fails to materialize. (*Id.* at 2, 7-8.) The Court also noted that neither party briefed or otherwise addressed the extent to which the Term Sheet continues to govern their relationship in light of the failed negotiations over the Operating Agreement. This issue remains unaddressed to this day and, consequently, the Court is reluctant to conclude, as a matter of fact and law, that Green Light has no adequate legal remedy available. Nonetheless, because both parties have not addressed this issue and briefed the instant motion as though no enforceable contract separate from the contemplated Operating Agreement exists, the Court will address the motion on the parties' terms.

Green Light argues that it is entitled to partial summary judgment because it indisputably paid Defendants $949,216.93 towards the development and operation of their marijuana business, but received no benefit in return. (Doc. 74 at 5.) To the extent Defendants dispute the precise amount of money Green Light invested, Green Light contends that the Court still may enter partial summary judgment on the issue of Defendants liability, even if damages must later be determined at trial. (*Id.* at 10.) The Court disagrees.

First, though Defendants concede that they received a financial investment from Green Light (Doc. 80 ¶ 37), they genuinely dispute the nature, quality, and quantity of that benefit. For example, Defendants raise concerns with the sufficiency of Green Light's evidence of the amounts paid. They also note that Green Light is counting money paid by Pro Grow, which is not a party. Additionally, Defendants contend that the investment was not as valuable to them as Green Light claims because the work was shoddy.

Second, Defendants have raised a colorable "unclean hands" defense, which precludes summary judgment on liability. (Doc. 79 at 4.) The unclean hands doctrine is

"an equitable defense to a claim seeking equitable relief," *Tripati v. Ariz. Dep't of Corr.*, 16 P.3d 783, 786 (Ariz. Ct. App. 2000), deriving from the principle that "[h]e who seeks equity must do equity," *Mason v. Ellison*, 160 P.2d 326, 328 (Ariz. 1945). The defense applies where the plaintiff has behaved in an unconscionable manner that "relate[s] to the very activity that is the basis of his claim." *Barr v. Petzhold*, 273 P.2d 161, 166 (Ariz. 1954). Moreover, a principal seeking an equitable remedy "may be bound by an agent's inequitable conduct." *Queiroz v. Harvey*, 205 P.3d 1120, 1122 (Ariz. 2009). Application of the doctrine rests "in the sound discretion of the trial court." *Manning v. Reilly*, 408 P.2d 414, 417-18 (Ariz. 1965).

Defendants offer evidence that, when construed in their favor, could permit a finding that Green Light's own conduct caused the parties' contemplated business venture to fail. For example, Green Light's agent, Mark Dupuis, purportedly was "combative and difficult to work with" and went so far as to lock Defendants out of certain rooms in "an attempt to take control of the operation himself." (Doc. 80-1 at 3.) Other agents smoked marijuana on the property and fought with each other. (*Id.* at 4.) Construction work performed by Green Light's agents was not up to code and was either "uncompleted or completed improperly." (*Id.*) Defendants also blame Green Light's agents for the decline or death of plants in the facility due to their lack of knowledge about marijuana cultivation. (*Id.*) A reasonable fact-finder could conclude that these actions caused or contributed to the failure of the parties' business venture and significantly harmed Defendants' property, marijuana crop, and reputation, such that it would be inequitable to require Defendants to compensate Green Light for what they contend is essentially a self-inflicted wound.

Green Light argues that Defendants have waived this defense by failing to plead or raise it in their Rule 26(f) report. Green Light provides no authority to support its proposition that unclean hands is considered an affirmative defense that, if not pleaded, results in a waiver, nor any authority to suggest that a failure to include such a defense in a Rule 26(f) report may result in a waiver. Rule 16(d), as cited by Green Light, provides

no illumination on this matter as this rule merely regulates protective and modifying orders for discovery hearings. The Court agrees that a failure to include such a defense in a pre-trial order would constitute a waiver. *See Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988). This is irrelevant, however, as no pre-trial orders issued.

The Court also notes that Defendants included as an affirmative defense in its answer that "Plaintiffs seek to recover more than they are entitled and such recovery would unjustly enrich Plaintiffs"; language that could be read to encompass unclean hands. (Doc. 56 at 9.) Given Green Light's failure to support its legal conclusions with relevant precedent, Defendants' assertion of a defense to unjust enrichment in their answer, and the significant "discretion" and "flexibility" enjoyed by this Court when operating in equity, *Holland v. Florida,* 560 U.S. 631, 650 (2010), the Court will consider the argument that Green Light has come to this Court with unclean hands.

Lastly, Green Light argues that the unclean hands defense cannot apply to conduct after a right to restitution has accrued, and that once it parted with its money on the mistaken believe that it had an enforceable contract with Defendants, it was entitled to restitution. (Doc. 81 at 6.) The Court, however, is not persuaded that Green Light's claim arises from a mistake concerning the enforceability of a contract. Indeed, it is not clear how Green Light's claim could arise out of a mistake over the enforceability of the Operating Agreement when no such agreement was executed, and Green Light does not argue or provide evidence that it mistakenly believed that an Operating Agreement had been drafted and signed by all parties. Moreover, there remain outstanding questions concerning whether the Term Sheet continues to govern the parties' relationship in the absence of an Operating Agreement. As the Court noted in its order denying Green Light's motion to compel arbitration, "[t]he Term Sheet appears to be an agreement regarding the principle terms of a forthcoming Operating Agreement should the parties later agree to create Dream Team." (Doc. 53 at 5.) To the extent Green Light's investments were made for the purpose of advancing the contemplated Dream Team

venture, it is at least arguable that its right to restitution accrued once the Dream Team negotiations failed.

### C. Conclusion

Summary judgment is meant "to avoid a useless trial." *Cox v. Am. Fidelity & Cas. Co.*, 249 F.2d 616, 618 (9th Cir. 1957). Though Defendants admit that they received money and services from Green Light, there remain disagreements over the nature, quality, and quantity of that benefit, as well as Green Light's entitlement to equitable relief, generally. For these reasons, Green Light has not shown that partial summary judgment is warranted.

**IT IS ORDERED** that:

1. Dream Team's motion to strike (Doc. 91) is **DENIED**.

2. Defendants' motion to dismiss the claims brought by Dream Team (Doc. 87) is **GRANTED**. The Clerk shall terminate Dream Team as a party.

3. Green Light's motion for partial summary judgment (Doc. 74) is **DENIED**.

Dated this 11th day of August, 2017.

Douglas L. Rayes
United States District Judge